IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

ARTHUR G. D'ARRIGO, JR.,

            Plaintiff,

    v.

GLOUCESTER CITY, et al.,

            Defendants.

Civil Action
No. 04-5967 (JBS)

**OPINION**

---

**APPEARANCES:**

Cris D'Arrigo, Esq.
D'ARRIGO & D'ARRIGO
114 West Commerce Street
Bridgeton, NJ 08302
    Attorney for Plaintiff

Michael O. Kassak, Esq.
WHITE & WILLIAMS, ESQS.
457 Haddonfield Road
Suite 400
Cherry Hill, NJ 08002-2220
    Attorney for Defendants Gloucester City, Gloucester City
    Police Department, Kenneth Iepson, Brian Morrell, and R.
    Kraft.

Susan M. Leming, Esq.
Diane S. Kane, Esq.
William M. Tambussi, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
Westmont, NJ 08108
    Attorneys for Defendants Delaware River Port Authority and
    Larry Goodwin

**Simandle, District Judge:**

**I.   INTRODUCTION**

In this suit, Plaintiff Arthur G. D'Arrigo, Jr., claims he

was arrested without probable cause by an officer of the Delaware

River Port Authority, who took him to the Gloucester City, N.J. Police Department for a breathalyzer test, where he was allegedly beaten by two officers of the Gloucester City Police Department on January 6, 2004, which caused permanent injuries including a fractured shoulder.  This matter comes before the Court on two motions for summary judgment, pursuant to Fed. R. Civ. P. 56 – one by Defendants Delaware River Port Authority ("DRPA") and Patrolman Larry Goodwin [Docket Item 23] and one by Defendants Gloucester City, Gloucester City Municipal Police Department, Officer Iepson, Officer Morrell and Officer Kraft (collectively "the Gloucester City Defendants") [Docket Item 28].  The principal issues to be determined include the availability of qualified immunity as a defense by the officers, and liability of the officers, the DRPA and Gloucester City for the alleged excessive force, arrest without probable cause, filing of false police reports, intimidation and humiliation, and bystander liability of an officer who fails to prevent use of excessive force by fellow officers, pursuant to the United States Constitution and New Jersey law.  For the reasons explained below, the Court shall grant the motions in part and deny them in part.

**II.  BACKGROUND**

This case arises out of a dispute over a traffic stop, sobriety testing, and the alleged harassment and assault of

Plaintiff Arthur D'Arrigo ("Plaintiff") by law enforcement officers.  On January 5, 2004, between approximately 9:30 P.M. and midnight, Plaintiff ate dinner with some friends in Philadelphia, shot pool, and consumed approximately three beers. (Def. DRPA and Goodwin's St. of Undisp. Material Facts (hereinafter "1DUMF") at ¶ 1-5.)[1]

At approximately 1 A.M. Plaintiff began driving himself back to Bridgeton, New Jersey.  (Id. at ¶ 6.)  He was driving approximately 85-90 miles per hour on Route 42 in Gloucester City, well over the speed limit, when he passed Defendant Patrolman Goodwin of the DRPA Police Department.  (Id. at ¶¶ 6-7.)  Patrolman Goodwin activated his lights and pulled Plaintiff over.  (Id. at ¶ 8.)  When Goodwin approached the car, Plaintiff admitted that he was going "very fast."  (Id. at ¶ 9.)  Goodwin asked Plaintiff whether he had been drinking and Plaintiff admitted that he had consumed three drinks that evening.  (Id. at ¶ 10.)  Goodwin asked Plaintiff to exit his vehicle to perform field sobriety testing.  (Id. at ¶ 12.)  The parties dispute whether Plaintiff passed the tests.  Goodwin then instructed Plaintiff to return to his vehicle.  (Id.)

DRPA Officer Smith then arrived at the scene, asked Plaintiff to get out of his car again, and performed additional

---

[1]  The facts set forth here are those facts in Defendants' statements of undisputed fact that are actually not in dispute and those facts set forth by Plaintiff in opposition.

3

sobriety tests.  (Id. at ¶ 13.)  The parties also dispute whether Plaintiff passed those tests.  Goodwin then asked Plaintiff if he could call someone to drive him home.  (Id. at ¶ 17.)  Plaintiff said "no" and insisted that he was not drunk.  (Id.) Plaintiff claims that he did not want anyone else driving his car and that it was not until he made that known to the officers that they decided to issue him a breathalyzer test.  (Pl. Alt. St. of Facts in opp. to DRPA and Goodwin's Mot. (hereinafter "1PASF") at ¶ 7.) Plaintiff was arrested, handcuffed, and placed in the back of the DRPA police cruiser.  (1DUMF at ¶ 18.)  When asked at his deposition why he didn't call someone to drive him home, Plaintiff said that he believed that if he took the breathalyzer test and proved his sobriety, then he would be set free (id. at ¶ 19).

Goodwin then drove Plaintiff to the Gloucester City police station.  (1PASF at ¶ 11.)  Upon arrival, Plaintiff was placed in a holding cell while Gloucester City Police Officer Kraft prepared the breathalyzer.  (Id. at ¶ 12.) Goodwin was not a certified breathalyzer operator.  (1DUMF at ¶ 21.)  Plaintiff claims that Defendants Iepson and Morrell, Gloucester City police officers, were teasing and taunting him.  (1PASF at ¶ 13.) Goodwin did not do anything to stop this teasing.  (Id. at ¶ 14.)

Officer Kraft then administered the breathalyzer test. (DUMF at ¶ 23.)  Plaintiff claims he blew full force into the

4

machine and that a green light came on when he did.  (1PASF at ¶ 16.)  Officer Kraft told Plaintiff he was not blowing hard enough and Plaintiff gave another breath sample.  (Id. at ¶ 17.) Plaintiff had never been arrested for DUI previously and had never taken a breathalyzer test.  (Id. at ¶ 15.)  Plaintiff again blew full force into the machine, according to him.  (Id. at ¶ 17.)  But Officer Kraft looked at Goodwin and said, "refusal?" . (Id.)  Goodwin nodded affirmatively, according to Plaintiff. (Id.)  Because Officer Goodwin was not trained to operate a breathalyzer machine, however, he relied on Officer Kraft's assessment of the test and whether Plaintiff had refused to provide a proper breath sample.  (Id. at ¶ 20.)

The Gloucester City officers continued to tease and taunt Plaintiff.  (Id. at ¶ 24.)  In response, Goodwin claims, Plaintiff, who was handcuffed[2], "stepped . . . towards the officers who were taunting him."  (Id.)  Officers Iepson and Morrell then tackled Plaintiff and "drove [him] through the door

---

[2]  Plaintiff claims he was handcuffed.  Goodwin claims he was in the process of handcuffing Plaintiff and only got one cuff on him by the time Plaintiff lunged at the officers and swung one arm free from Goodwin's hold.  In Plaintiff's alternative statement of facts, he refers to Goodwin's testimony about this lunge, but does not indicate whether Goodwin's account is correct.  However, as the Court must view the facts in the light most favorable to Plaintiff at the summary judgment stage, the Court will assume that Plaintiff's account of events is the true one and that he was handcuffed.  In other words, Defendants Goodwin and DRPA have failed to meet their burden of showing that this material fact is undisputed.

of the holding cell and rammed the Plaintiff into the rear wall of that cell." (<u>Id.</u> at ¶ 22.)  An officer laid on top of Plaintiff and punched him in the chest approximately five times. (<u>Id.</u> at ¶ 23.)  Officers Iepson and Morrell are each over six feet tall (<u>Id.</u> at ¶ 26) and Plaintiff is approximately five feet tall and weighs about 130 pounds (<u>Id.</u> at ¶ 29).

Plaintiff claims that while he was in the holding cell, several Gloucester City officers came to the window of the cell and taunted him by saying, "How do you feel now, little man?" and "You're a loser." (1DUMF at ¶ 31.)  Plaintiff also claims his shoulder was injured in the encounter with the officers and that he sat in pain in the cell for twenty minutes until Goodwin transported him to DRPA headquarters. (<u>Id.</u> at ¶¶ 32-33; 1PASF at ¶ 28.)  On the way, he complained of significant pain in his arm and shoulder. (1PASF at ¶ 28.)  DRPA Officer Smith heard Plaintiff complain about his shoulder and offered medical assistance, which Plaintiff refused. (1DUMF at ¶ 34.)  Plaintiff was charged with driving under the influence and refusing to provide a breath sample, but not with resisting arrest. (1PASF at ¶ 32.)

Plaintiff called his brother, an attorney, from DRPA headquarters. (1DUMF at ¶ 35.)  Plaintiff's brother picked him up and drove him to Elmer Hospital, where tests revealed that Plaintiff's shoulder was broken. (<u>Id.</u> at ¶¶ 36-37.)  Within a

day or two, Plaintiff returned to his full-time job as a mortgage banker and missed work thereafter occasionally to attend physical therapy sessions for his shoulder.  (Id. at ¶ 38.)  Plaintiff claims he continues to suffer pain in his shoulder and can no longer play basketball.  (Id. at ¶¶ 41-42.)

Plaintiff admits that he never directly complained to any officer that he was suffering shoulder pain and that when he made comments to himself about the pain at the Gloucester City police station, he does not know whether Goodwin was near enough to hear him.  (Id. at 45.)  Plaintiff admits that after leaving the Gloucester City Police Department, he did not directly tell Goodwin that his shoulder hurt.  (Id.)  Further, Plaintiff testified at his deposition that Goodwin never ridiculed him or teased him (id. at ¶ 46); rather Plaintiff blames Goodwin for failing to intervene to prevent the other officers from teasing and assaulting Plaintiff.  (Pl. Resp. to 1DUMF at ¶¶ 44, 46.)  Plaintiff also testified that he has no facts to support his argument that DRPA failed to properly train or supervise Patrolman Goodwin or any other officer.  (1DUMF at ¶ 48.)

An expert physician retained by Defendants Gloucester City, Gloucester City Police Department, Officer Iepson, Officer Morrell and Officer Kraft examined Plaintiff and concluded that he has no physical functional limitations or impairments and can participate in physical activities without restriction.

7

(Gloucester City Def. St. Undisp. Mat. Facts at ¶ 35.)  Plaintiff claims that his medical records contradict that finding.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

In deciding whether there is a disputed issue of material fact, a court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State

8

Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).  The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party would have the burden of persuasion at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. P'ship of Gepner and Ford, 930 F.2d 1056, 1061-63 (3d Cir. 1991).  "The burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

"[T]he nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered."  U.S. v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence  of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial.

Celotex, 477 U.S. at 323.

**IV.  DISCUSSION**

    **A.  Motion for Summary Judgment by Defendants DRPA and Patrolman Larry Goodwin**

Defendants DRPA and Goodwin move for summary judgment on all counts of Plaintiff's Complaint that are asserted against them. Because not all claims are asserted against both parties, the Court shall treat these Defendants separately.

    1.  Claims Against Defendant Goodwin via 42 U.S.C. § 1983

Defendant Goodwin moves for summary judgment on Counts Two, Three, Five and Seven of the Complaint, which assert claims against him via 42 U.S.C. § 1983.[3]  Count Two alleges unconstitutional[4] excessive force; Count Three alleges that

---

[3]  Of course 42 U.S.C. § 1983 does not create substantive rights; rather it provides a vehicle for vindicating rights protected by the Constitution or laws of the United States. Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). "A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law."  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) (citing Gomez v. Toledo, 446 U.S. 635, 640 (1980)).

[4]  In the Complaint, Plaintiff's constitutional claims are always alleged to be violations of both the federal and New Jersey Constitutions, although Plaintiff makes no reference to which provisions of New Jersey's Constitution were allegedly violated.  Of course, violation of Plaintiff's state constitutional rights would not entitle him to bring an action via 42 U.S.C. § 1983 and therefore the Court considers no state constitutional claim.

Goodwin and the other officers violated Plaintiff's due process rights by filing a false police report[5]; Count Five complains of intimidation and humiliation, but alleges no federally-protected right; and Count Seven alleges that the officers violated Plaintiff's due process rights by holding him against his will without probable cause.  Defendant Goodwin argues that because all evidence indicates that he acted objectively reasonably, he enjoys immunity from liability as to all of these § 1983 claims.

---

[5] Plaintiff's opposition to Goodwin and DRPA's motion for summary judgment does not address Goodwin's argument that he is entitled to summary judgment on Count Three because even on Plaintiff's version of facts, no harm resulted to Plaintiff from the police report.  Because 42 U.S.C. § 1983 claims are cognizable only when there has been a harm to a federally-protected right, see, e.g., Paul v. Davis, 424 U.S. 693 (1976) (defamation is not cognizable deprivation of liberty or property) and Landrigan v. City of Warwick, 628 F.2d 736, 745 (1st Cir. 1980) ("the mere filing of the false police reports, by themselves and without more, did not create a right of action in damages under 42 U.S.C. § 1983"), and because this aspect of the motion is unopposed, the Court shall grant Goodwin's motion for summary judgment as to Count Three.  Indeed, Plaintiff has not explained how his right to due process was affected by this allegedly false report, which Plaintiff does not claim caused him any deprivation of liberty or property.

Similarly, the Court must grant the motion for summary judgment by the Gloucester City Defendants on Plaintiff's identical claim against them for filing a false police report.

Plaintiff's only argument is that filing a police report constitutes a crime under New Jersey law and that DRPA and Gloucester City reports differ so substantially that one must be false.  Those facts, however, are irrelevant to Plaintiff's § 1983 claim unless he suffered some cognizable harm, as explained above.  Plaintiff has not alleged that a false police report has deprived him of liberty or property that would entitle him to pursue a § 1983 action against these Defendants for filing such a false police report, also in Count Three.

Plaintiff opposes, claiming that the question whether Goodwin's actions were reasonable should be left to the jury. (Pl. Br. Opp. Goodman/DRPA Mot. at 25, 32-33.)  Plaintiff cites a New Jersey Supreme Court opinion, Schneider v. Simonini, 163 N.J. 336 (2000), to support his argument that a jury must determine the underlying facts before a judge can determine whether the defendant invoking qualified immunity behaved reasonably (Pl. Br. Opp. Goodman/DRPA Mot. at 33.).[6]

In determining the issue of a defendant's qualified immunity for unconstitutional conduct, the Third Circuit, following Saucier v. Katz, 533 U.S. 194 (2001), has described the two-step inquiry:

---

[6] In Simonini, the New Jersey Supreme Court explained that where a disputed fact would be material to a judge's determination whether a government official's conduct was reasonable, the court should allow the jury to determine that disputed fact:

> That means the judge must decide whether probable cause existed, and if not, whether the executive official could reasonably have believed in its existence. Where historical or foundational facts that are critical to those determinations are disputed, the jury should decide those disputed facts on special interrogatories. The jury's role "should be restricted to the who-what-when-where-why type of historical fact issues." Cottrell[ v. Caldwell], 85 F.3d [1480,] 1488 [(11th Cir. 1996]. Based on the jury's factual findings, the trial judge must then make the legal determination of whether qualified immunity exists.

163 N.J. at 359.

> In considering whether qualified immunity
> applies, a court must first decide whether
> the facts, taken in the light most favorable
> to the plaintiff, demonstrate a
> constitutional violation. Curley v. Klem, 298
> F.3d 271, 277 (3d Cir. 2002) (citing Saucier[
> v. Katz], 533 U.S. [194,] 201 [(2001)]). If
> so, the court next determines whether the
> constitutional right in question was clearly
> established. Id. at 277 (citing Saucier, 533
> U.S. at 201). "The relevant, dispositive
> inquiry in determining whether a right is
> clearly established is whether it would be
> clear to a reasonable officer that his
> conduct was unlawful in the situation he
> confronted." Saucier, 533 U.S. at 202. "If
> the officer's mistake as to what the law
> requires is reasonable," the officer is
> entitled to qualified immunity. Id. at 205.

Couden v. Duffy, 446 F.3d 483, 492 (3d Cir. 2006).

On this issue of federal immunity, this Court looks to the

Third Circuit, which in Curley v. Klem, 298 F.3d 271 (3d Cir.

2002), made a similar point as the New Jersey Supreme Court in

Simonini.  In Curley the Third Circuit reviewed a District

Court's grant of summary judgment to the defendant and explained

that "at this stage of the qualified immunity analysis, where we

discern simply whether [the plaintiff] alleges conduct in

violation of a constitutional right, we must consider only the

facts alleged by [the plaintiff], taken in the light most

favorable to him."  Id. at 279-80.

> "[T]he standard for granting or denying a
> motion for summary judgment does not change
> in the qualified immunity context."  See
> Karnes[ v. Skrutski], 62 F.3d [485,] 494 [(3d
> Cir. 1995].  Viewing the facts in the light

13

most favorable to the plaintiff, a court must
determine whether the defendant should
prevail as a matter of law. See id.; see also
Gruenke[ v. Seipe, 225 F.3d [290,] 299-300
[(3d Cir. 2000)] (observing that "this
admittedly fact-intensive analysis must be
conducted by viewing the facts alleged in the
light most favorable to the plaintiff").

Curley, 298 F.3d at 282-83.

Plaintiff does not identify any disputed fact that is
relevant to the Court's determination of qualified immunity for
Defendant Goodwin and that might call for special interrogatories
to a jury.  As to the excessive force claim and intimidation
claims, Counts Two and Five, Defendant Goodwin and Plaintiff
essentially agree for purposes of this motion that Goodwin stood
by as other officers assaulted and harassed Plaintiff.  They only
dispute whether that inaction makes Goodwin liable.  Although the
Court must determine at this stage whether Goodwin had an
opportunity to intervene to prevent the harassment and assault by
other officers, the parties do not dispute that "from the time of
contact with Officers Iepson and Morrell to the time that the
Plaintiff was punched in the holding cell was very rapid."  (Pl.
Resp. to 1DUMF at ¶ 28.)  There is no additional fact a jury
needs to find for the Court to decide whether Defendant Goodwin's
failure to intervene entitles him to immunity on a summary
judgment motion.  Indeed, Plaintiff's theory is that because
Goodwin had an opportunity to intervene to prevent the
harassment, and because the harassment caused Plaintiff to lunge

14

at the police officers, which caused the officers to assault him, Goodwin should be held liable for excessive force based on his failure to intervene to stop the harassment. (Pl. Br. Opp. Goodwin/DRPA Mot. for Summ. J. at 23.)

As to Plaintiff's claim in Count Seven, lack of probable cause, the Court needs no jury to aid the qualified immunity decision because the Court will simply view the facts supported by the record that favor Plaintiff.  Taking these as true, the Court can then determine whether Goodwin's conduct was such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted, obviating any need for the jury to resolve the facts at this stage.  The Court will consider only the facts in the light most favorable to Plaintiff to determine whether Goodwin is entitled to qualified immunity. Plaintiff argues that viewing the facts in the light most favorable to him, including statements Goodwin made at his deposition, Goodwin lacked probable cause to arrest him and should be held liable.  Goodwin's summary judgment motion argues to the contrary.  This is the standard posture in which a court decides motions pursuant to Fed. R. Civ. P. 56.  To determine qualified immunity on these claims also requires no aid from a jury.

Therefore, the Court will proceed to determine, for each claim alleged against Goodwin, whether he is entitled to

qualified immunity.  Goodwin will not be entitled to such
immunity if (1) the facts, taken in the light most favorable to
Plaintiff, demonstrate a constitutional violation and (2) the
right was clearly established such that Goodwin's violation of it
was not reasonable.

*a.   Excessive Force*

Plaintiff alleges that Goodwin is liable for other officers'
use of excessive force because Plaintiff was in Goodwin's custody
and stood by while the Gloucester City officers taunted him to
the point that a physical confrontation occurred.  "'To state a
claim for excessive force as an unreasonable seizure under the
Fourth Amendment, a plaintiff must show that a 'seizure' occurred
and that it was unreasonable.'" <u>Kopec v. Tate</u>, 361 F.3d 772, 776
(3d Cir. 2004) (quoting <u>Estate of Smith v. Marasco</u>, 318 F.3d 497,
515 (3d Cir. 2003)).[7]  A plaintiff can sustain an excessive force
claim against an officer who did not participate directly in the
use of force if the defendant officer failed to intervene to
prevent the use of excessive force when there was a reasonable
opportunity to do so.  <u>See</u> <u>Smith v. Mensinger</u>, 293 F.3d 641, 650
(3d Cir. 2002).  "'If a police officer, whether supervisory or
not, fails or refuses to intervene when a constitutional
violation such as an unprovoked beating takes place in his

---

[7]  As neither Goodwin nor Plaintiff disputes that the
assault constituted a seizure, the Court will assume that is so
for purposes of the DRPA/Goodwin motion.

16

presence, the officer is directly liable under Section 1983.'" Id. (quoting Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986)).  "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." Id. at 651.

At his deposition, Plaintiff described the assault as occurring very quickly:

> I was handcuffed by Officer Goodwin and being
> led towards the holding cell.  As I said,
> these guys came in on a run, and it happened
> very, very quickly. [Officer Goodwin] was
> behind me.  He had cuffed me and was behind
> me and this guy was coming  – I was walking
> toward the holding cell and I could see them
> come into the room at a rush, basically [the
> Gloucester City officers] grabbed me and just
> rammed me back into the holding cell, grabbed
> me, turned me so that I was completely off my
> feet at least at one point and just – again,
> just rammed me into the back of the room . .
> . .  After I hit the wall the officer who was
> lying on top of me then punched me four or
> five times in the rib cage.

It is disputed whether Plaintiff was already handcuffed or whether Goodwin was in the process of handcuffing him, as Goodwin contends.  Also, it is unclear to the Court whether Plaintiff disputes that he lunged at the Gloucester City Officers prior to the assault, as Goodwin contends.  However, viewing the facts in the light most favorable to Plaintiff, Goodwin had a reasonable opportunity to intervene to prevent the punching.  Plaintiff's account indicates that Officer Goodwin was standing directly behind him when the assault occurred and did not say or do anything to discourage it.  While it may or may not have been

17

possible for Goodwin to prevent the very fast rush of the
Gloucester City officers onto Plaintiff, there certainly appears
to have been a reasonable opportunity for Goodwin to intervene
once the officers crashed on top of Plaintiff in the holding
cell.  A reasonable jury could find that Goodwin had an
opportunity to prevent the assault from the officer who
repeatedly punched Plaintiff.  Viewing the facts in the light
most favorable to Plaintiff, a reasonable jury could conclude
from Plaintiff's admissible evidence that Defendant Goodwin could
have intervened to stop the assault.[8]

Although not necessary to the Court's consideration of the
immunity issue, the Court rejects Plaintiff's argument that the
state-created danger theory should apply to impose liability on
Goodwin.  Liability under the state-created danger theory
requires that the governmental actor defendants "create[d]
plaintiffs' peril, increase[d] their risks of harm, or act[ed] to
render them more vulnerable to the [private] . . . defendants'
assaults."  D.R. by L.R. v. Middle Bucks Area Voc. Tech. Sch.,
972 F.2d 1364, 1374 (3d Cir. 1992).  The issue is "whether the

---

[8]  Plaintiff's argument that Goodwin should have intervened
to stop the verbal taunts is beside the point; failure to
intervene only amounts to a constitutional violation if the act
in which the plaintiff had an opportunity to intervene was itself
unconstitutional.  Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir.
2002).  As explained below, the Court finds that viewing the
facts in the light most favorable to Plaintiff, a reasonable jury
could find that the physical altercation amounted to excessive
force in violation of Plaintiff's constitutional rights.

18

[defendant] state actors involved affirmatively acted to *create* plaintiff's danger, or to render him or her more *vulnerable* to it," id. at 1373, because "the Due Process Clause does not impose an affirmative duty upon the state to protect its citizens," id. at 1369.

Fundamentally, the state-created danger theory does not apply in cases like this one. "State-created danger" refers to a state actor's culpability for harms ultimately inflicted by a private party. There are four essential elements of a state-created danger claim:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006). On the other hand, where the harm is the direct result of conduct by another state actor and there is no evidence showing an opportunity to intervene, additional recourse to the state-

19

created danger theory seems an improper attempt to duplicate recovery by imposing one officer's liability on another. Even if the doctrine applied, Plaintiff's facts do not satisfy it.[9]

Nevertheless, the Court shall deny summary judgment on Count Two. First, the facts taken in the light most favorable to Plaintiff would permit a reasonable jury to find that Goodwin, who was standing directly behind Plaintiff when Gloucester City Officers attacked him, was liable for violation of Plaintiff's Fourth Amendment rights because he failed to intervene to prevent a Gloucester City officer from repeatedly punching Plaintiff in

---

[9] In this case, the affirmative acts that Defendant Goodwin took were arresting Plaintiff and transporting him to the Gloucester City police department so Plaintiff could provide a breath sample. First, the harm those officers allegedly caused Plaintiff was neither foreseeable nor a direct result of Goodwin's taking Plaintiff to the Gloucester City police station. Importantly, Plaintiff has provided no evidence that incidents like these occurred in the past at that police station. There is no evidence that any action by Goodwin could be linked "fairly direct[ly]" to the assault – the assault was not the foreseeable result of the arrest or the transport to the police headquarters. Second, Plaintiff points to no evidence indicating Goodwin took him to the police department in willful disregard for his safety. Nor does Goodwin's decision to test the breath of a suspected driver under the influence of alcohol "shock the conscience," even assuming that Plaintiff passed some of the road-side sobriety tests, as he claims. See Schieber v. City of Philadelphia, 320 F.3d, 409 417 (3d Cir. 2003)(explaining that liability will not attach unless conduct "shocks the conscience"). It is undisputed Plaintiff drank at least three beers and was observed driving at an excessive speed, so it was not unreasonable to take him in for a breathalyzer test. Even assuming the third and fourth elements of the state-created danger theory are met on Plaintiff's version of events, it cannot fairly be said that Goodwin affirmatively acted to cause the danger of the assault. See Kneipp, 95 F.3d at 1374. Thus, Goodwin cannot be liable under the state-created danger theory.

20

the chest.  Second, the right to be free from such an
unreasonable seizure (i.e., the assault by police officers), and
Goodwin's obligation to intervene, are clearly established such
that Goodwin's conduct was not reasonable.  Defendant Goodwin is
not entitled to qualified immunity on the excessive force claim
and the Court will therefore deny his motion for summary judgment
on Count Two.

> b.   *Intimidation and Humiliation*

In Count Five of the Complaint, Plaintiff alleges that the
defendants' "actions in subjecting Plaintiff to intimidating,
humiliating and degrading treatment constituted violations of the
United States Code 42 U.S.C.A. § 1983 et seq."  The Court shall
grant Defendant Goodwin's motion for summary judgment on this
Count because (1) 42 U.S.C. § 1983 does not provide Plaintiff any
substantive rights, but rather only provides a vehicle for
protecting established federal rights, see n.2, supra, and (2)
Plaintiff identifies no federally-protected right, nor is the
Court aware of any, that could have been injured by the name-
calling and taunting at issue in this case.[10]

> c.   *Holding Plaintiff Without Probable Cause*

In Count Seven of his Complaint, Plaintiff alleges that the
"Defendants' actions in hol[d]ing plaintiff against his will

---

[10]   For the same reasons, the Court shall grant summary
judgment to the Gloucester City defendants on this claim.

without probable cause constitute a violation of the Plaintiff's Substantive and Procedural rights to due process guaranteed by" the New Jersey and federal Constitutions, which he alleges "constitute violations of the United States Code 42 U.S.C.A. § 1983. . . ." Liberally construed, this is a constitutional claim for arrest without probable cause, in violation of the Fourth Amendment, brought via 42 U.S.C. § 1983. Indeed, that is how the parties to this motion construe it in their briefs.

An arrest without a warrant is permissible under the Fourth Amendment so long as the arresting officers had probable cause to believe a crime had occurred or was occurring. Probable cause exists where "facts and circumstances [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." Sharrar v. Felsing, 128 F.3d 810, 818 (3d. Cir. 1997).

The parties do not agree whether Plaintiff passed his sobriety testing prior to his arrest. However, there is no material dispute that Goodwin saw Plaintiff speeding and pulled him over.[11] Further, the parties agree that Plaintiff had been

---

[11] This alone created probable cause for an arrest and entitles Goodwin to summary judgment on Count Seven.

> [T]he standard of probable cause "applies to all arrests, without the need to 'balance' the interests and circumstances involved in particular situations." Dunaway v. New York, 442 U.S. 200, 208 [](1979). If an officer has probable cause to believe that an

drinking that evening and that when he was pulled over by Officer Goodwin, he told Goodwin that he had been drinking and admitted he was driving "very fast."  On this undisputed evidence, Goodwin had probable cause to arrest Plaintiff for driving while intoxicated, N.J. Stat. Ann. § 39:4-50, and speeding, so the Court will grant summary judgment to him on Count Seven. Plaintiff may not proceed with claims of arrest without probable cause against Defendant Goodwin.

Further, it is undisputed that after Officer Kraft informed Goodwin that Plaintiff refused the breathalyzer, Goodwin had probable cause to continue to hold Plaintiff and charge him with that refusal, thus insulating Goodwin from any constitutional claim for Goodwin's decision to hold Plaintiff after that alleged refusal.  Goodwin had probable cause to believe, based on Kraft's reading of the breathalyzer, that Plaintiff refused a breathalyzer in violation of New Jersey law, N.J. Stat. Ann. § 39:4-50.40a.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 635 n.10 (3d Cir. 1995) (probable cause existed when one officer told another officer crime occurred, precluding Fourth Amendment false arrest and imprisonment claims as to the second officer).  Thus,

_____

          individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.

Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

23

the claims in Count Seven cannot proceed against Defendant
Goodwin and he is entitled to summary judgment.[12]

       3.   Claims against DRPA via 42 U.S.C. § 1983

DRPA claims that the federal claims against it that
Plaintiff levies via 42 U.S.C. § 1983 fail as a matter of law
because 42 U.S.C. § 1983 does not permit vicarious liability
claims.  Plaintiff does not oppose this aspect of the
Goodwin/DRPA motion for summary judgment.  For the reasons
explained below, the Court shall grant DRPA summary judgment on
all vicarious liability claims brought against it via 42 U.S.C. §
1983 -- Counts Two, Three, Five and Seven.

It is well-settled that local governmental units cannot be
held civilly liable for violations of one's federal rights,
pursuant to 42 U.S.C. § 1983, solely on the basis of a *respondeat
superior* theory of liability, Monell v. Dep't of Soc. Svcs., 436
U.S. 658 (1978); rather, a local government unit may be liable
only if its policy or custom is the "moving force" behind a
constitutional violation, Sanford v. Stiles, 456 F.3d 298, 314
(3d Cir. 2006).

_____

   [12]  Because Goodwin also had probable cause under New Jersey
law and because probable cause is an absolute defense to
Plaintiff's New Jersey tort claims of false arrest and false
imprisonment in Count Six, see Wildoner v. Bor. of Ramsey, 162
N.J. 375 (2000), the Court shall grant Goodwin summary judgment
on the claims asserted in Count Six.  Because DRPA's liability
under Count Six is premised on a theory of vicarious liability,
DRPA is also entitled to summary judgment on those claims.

Thus,

> a plaintiff seeking to impose liability
> on a municipality[13] under § 1983 [must]
> identify a municipal "policy" or
> "custom" that caused the plaintiff's
> injury. Locating a "policy" ensures that
> a municipality is held liable only for
> those deprivations resulting from the
> decisions of its duly constituted
> legislative body or of those officials
> whose acts may fairly be said to be
> those of the municipality. Similarly, an
> act performed pursuant to a "custom"
> that has not been formally approved by
> an appropriate decisionmaker may fairly
> subject a municipality to liability on
> the theory that the relevant practice is
> so widespread as to have the force of
> law.

> [Bd. of County Comm'rs. v.] Brown, 520 U.S.
> [397, ]403-04 [(1997)] (citations omitted).
> In other words, "[a] plaintiff must identify
> the challenged policy, attribute it to the
> city itself, and show a causal link between
> execution of the policy and the injury
> suffered." Losch v. Parkesburg, 736 F.2d
> 903, 910 (3d Cir. 1984).

Adams v. City of Camden, 461 F. Supp. 2d 263, 267 (D.N.J. 2006).

Plaintiff has not identified any DRPA policy or custom -
either in the Complaint or in evidence presented in opposition to
this summary judgment motion - that would support any finding of
§ 1983 liability on the part of the DRPA.  For those reasons, the
Court shall grant DRPA summary judgment on all § 1983 claims
against it.

---

[13] DRPA concedes that it should be treated like a
municipality, and not like an arm of the state, for purposes of
42 U.S.C. § 1983.

4.   State Law Claims Against Goodwin[14]

Plaintiff asserts several tort claims against Defendant Goodwin pursuant to New Jersey law: excessive force (Count One), intentional infliction of emotional distress (Count Four) and false arrest/imprisonment (Count Six).  The Court has already determined that Goodwin is entitled to summary judgment on Count Six because he had probable cause to arrest and hold Plaintiff. Defendant Goodwin also asserts that he is entitled to summary judgment on Plaintiff's tort claims in Counts One and Four. Plaintiff's brief does not address Count Four, intentional infliction of emotional distress, therefore, the Court shall deem that aspect of Goodwin's motion to be unopposed and shall grant it.  As explained below, however, the Court shall deny Officer Goodwin's motion for summary judgment on the remaining state law claim for excessive force, because he has not established good faith immunity under the New Jersey Tort Claims Act, N.J. Stat. Ann. § 53:3-3.

Defendant Goodwin argues that he is entitled to immunity under the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:3-3, for all state tort claims asserted against him because he acted

_____

[14]   Goodwin argues that if the Court dismisses all § 1983 claims against him, then it should also decline to exercise supplemental jurisdiction over the state law claims against him. See 28 U.S.C. § 1367(c).  Because the Court has permitted Plaintiff's claim of unconstitutional excessive force to proceed against Goodwin based on his failure to intervene, the Court need not address that jurisdiction argument.

26

in good faith and was not reckless.  See N.J. Stat. Ann. § 32:4-6 (DRPA police officers have same immunities under New Jersey law as state and municipal police officers).  Plaintiff opposes, arguing that the Tort Claims Act does not apply to DRPA.  In his reply brief, Goodwin acknowledges that the DRPA itself is not covered by the Tort Claims Act but argues that N.J. Stat. Ann. § 32:4-6 applies the immunities in the Tort Claims Act to DRPA *officers*.

The New Jersey Tort Claims Act ("the Tort Claims Act" or "the Act") is a comprehensive statute regulating the immunities and liabilities of New Jersey's public entities.  One provision of the Act exempts public employees acting in good faith from civil liability for the harms they cause: "A public employee is not liable if he acts in good faith in the execution or enforcement of any law."  N.J. Stat. Ann. § 59:3-3.  However, the New Jersey Supreme Court has determined that the DRPA is not a "public entity" within the meaning of the Act and that, therefore, the Act does not apply to DRPA.  Bell v. Bell, 83 N.J. 417 (1980).

Yet, the officers may have immunity that the entity itself does not possess.  By its plain language, New Jersey's DRPA statute provides DRPA police officers, such as Defendant Goodwin, with the same immunity provided to other law enforcement officers under New Jersey law:

> [W]hile acting within any other areas of the
> port district, police officers appointed by
> the Delaware River Port Authority shall have
> all of the powers, including the right to
> carry firearms while on duty, and all of the
> immunities conferred by law on police
> officers or municipal police officers in the
> enforcement of the laws of the State of New
> Jersey and the Commonwealth of Pennsylvania .
> . . .

N.J. Stat. Ann. § 32:4-6.  This immunity was not a part of the original Act, but rather, became part of the statute when DRPA police powers were expanded in 1987.  See Act of Jan. 8, 1987, ch. 209, 1986 N.J. Sess. Law Serv. 206 (West); S. Ind. Auth. Comm. St. on S. 2287 (N.J. 1986)("The bill also confers on DRPA police officers acting within the port district all of the powers and immunities enjoyed by other police officers in New Jersey and Pennsylvania.")

Pennsylvania's DRPA statute contains an identical provision, 36 P.S. § 3504.1, but Pennsylvania tort law does not include good faith immunity from tort claims.  Because DRPA is a bi-state agency, generally a law must be in force in both Pennsylvania and New Jersey before that law can apply to the agency.  See Bell, 83 N.J. at 424 and Del. Riv. & Bay Auth. v. N. J. Pub. Emp. Rel. Com., 112 N.J. Super. 160 (App. Div. 1970), aff'd o. b. 58 N.J. 388, 277 (1971) ("Bi-state agencies exist by virtue of compacts between the states involved, entered into by their respective legislatures with the approval of Congress. When formed, they become a single agency of government of both states. ... We fail

28

to see how either state could enact laws involving and regulating the bi-state agency unless both states agree thereto. To sanction such practice would lead to discord and a destruction of the purposes for which such bi-state agencies are formed."). However, there is a strong argument that good faith immunity would be available to DRPA officers because (1) they are not the agency itself, to which the Tort Claims Act does not apply and (2) both states agreed, through enactment of N.J. Stat. Ann. § 32:4-6 and 36 P.S. § 3504.1, that any DRPA officer's conduct would be governed by the tort immunity available to that officer under the substantive tort law being applied to that officer's conduct. Thus, it follows, according to the law of both New Jersey and Pennsylvania, when a DRPA's officer's conduct occurs wholly within New Jersey, New Jersey tort law and its attendant immunities apply and when an officer's conduct occurs in Pennsylvania, Pennsylvania tort law, including its absence of good faith immunity, applies. This Court need not decide this issue, however, because even if one assumes that the defense of good faith immunity from state tort claims is available to a DRPA officer acting in New Jersey, Officer Goodwin's conduct, as alleged in the evidence presented by Plaintiff, does not qualify for good faith immunity.

Good faith immunity is not available to Goodwin under the Tort Claims Act in this case because there is a material question

of fact whether his failure to intervene to stop the use of
excessive force was in good faith.

> The same "objective reasonableness" standard
> that is used to determine whether a defendant
> enjoys qualified immunity from actions
> brought pursuant to 42 U.S.C. § 1983 is used
> to determine questions of good faith arising
> under N.J.S.A. § 59:3-3. See Lear v. Twp. of
> Piscataway, 236 N.J. Super. 550, 553, 566
> A.2d 557 (App. Div. 1989). Therefore, the
> same uncertainty that prevents the Court from
> determining as a matter of law whether [the
> defendant police officer] enjoys qualified
> immunity with regard to [the plaintiff's] §
> 1983 claim also prevents the Court from
> determining as a matter of law whether the
> TCA [(Tort Claims Act)] shields him from
> liability for allegedly assaulting
> [plaintiff].

Mantz v. Chain, 239 F. Supp. 2d 486, 508 (D.N.J. 2002).
Accordingly, the Court will deny summary judgment on Goodwin's
claims of good faith immunity and will permit Plaintiff's state
law claim for excessive force, Count One, to proceed.

### B. Motion for Summary Judgment by Defendants Gloucester City, Gloucester City Police Department, and Officers Iepson, Morrell, and Kraft

The Gloucester City Defendants also moved for summary
judgment.  For the reasons explained below[15], the Court shall

---

[15]  The Court has already granted this motion insofar as it
seeks to preclude Plaintiff's federal claims against the
Gloucester City defendants for allegedly filing a false police
report.  See n.4, supra.  In addition, the Court has granted
Defendant Goodwin summary judgment on Plaintiff's claims of false
arrest and imprisonment because there was probable cause to
arrest Plaintiff.  Insofar as Plaintiff asserts the identical
claims against the Gloucester City Defendants for false arrest
and imprisonment based on their complicity in Goodwin's alleged

deny summary judgment on Plaintiff's claim of unconstitutional excessive force against Officers Iepson and Morrell and shall grant summary judgment on that claim as to Officer Kraft; shall grant the motion for summary judgment of the Gloucester City Police Department; shall grant the motion for summary judgment by these defendants as to any claim for intentional infliction of emotional distress, which aspect of the motion Plaintiff does not address; and shall deny the motion for summary judgment on Plaintiff's claims for damages related to his pain and suffering.[16]

>    1.   <u>Excessive Force Claim Against Officers Iepson and Morrell</u>[17]

The facts viewed in the light most favorable to Plaintiff show that Gloucester City Officers Iepson and Morrell participated in an assault on Plaintiff in violation of his

---

misconduct, the Gloucester City defendants are also entitled to summary judgment.

[16] Gloucester City also argues that claims against it for punitive damages must be dismissed.  Plaintiff does not oppose that aspect of the motion and New Jersey law does not appear to permit such damages against a public entity.  N.J. Stat. Ann. § 59:9-2(c).  Therefore, the Court shall grant that aspect of the motion for summary judgment.

[17] Plaintiff concedes that Officer Kraft did not use excessive force against him.  In addition, Plaintiff has come forward with no evidence indicating that Kraft had any opportunity to intervene in the assault by the other officers.  Therefore, the Court shall grant summary judgment for Officer Kraft on Plaintiff's claims against him for unconstitutional excessive force and for tortious assault.

Fourth Amendment rights.  To state a claim for excessive force
under the Fourth Amendment, a plaintiff must show that defendants
seized him with an unreasonable degree of force.  <u>Kopec v. Tate</u>,
361 F.3d 772, 776 (3d Cir. 2004).

> The test of reasonableness under the Fourth
> Amendment is whether under the totality of
> the circumstances, "the officers' actions are
> 'objectively reasonable' in light of the
> facts and circumstances confronting them,
> without regard to their underlying intent or
> motivations." <u>Graham v. Connor</u>, 490 U.S. 386,
> 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443
> (1989). Thus, if a use of force is
> objectively reasonable, an officer's good
> faith is irrelevant and any bad faith
> motivation on his part is immaterial. <u>See</u>
> <u>Estate of Smith</u>, 318 F.3d at 515; <u>Abraham [v.</u>
> <u>Raso]</u>, 183 F.3d [279,] 289 [(3d Cir. 1999)].
> Factors to consider in making a determination
> of reasonableness include the severity of the
> crime at issue, whether the suspect poses an
> immediate threat to the safety of the
> officers or others, and whether he actively
> is resisting arrest or attempting to evade
> arrest by flight. <u>See</u> <u>Graham</u>, 490 U.S. at
> 396, 109 S. Ct. at 1872. A court in making a
> reasonableness assessment also may consider
> the possibility that the persons subject to
> the police action are violent or dangerous,
> the duration of the action, whether the
> action takes place in the context of
> effecting an arrest, the possibility that the
> suspect may be armed, and the number of
> persons with whom the police officers must
> contend at one time. <u>See</u> <u>Sharrar v. Felsing</u>,
> 128 F.3d 810, 822 (3d Cir. 1997).

<u>Kopec</u>, 361 F.3d at 776-77.

Defendants do not claim that the use of force in this

incident was reasonable.[18]  Rather, they argue that because

Plaintiff is unable to identify which officers punched and

tackled him, a reasonable jury could not find by the

preponderance of the evidence that either of them used excessive

force.  Plaintiff opposes, noting that although he might not have

personal recollection of the names of the officers who assaulted

him, other evidence in the case, including a police report filed

by Officer Kraft indicating that Morrell and Iepson were involved

in the incident (Ex. A to Pl.'s Opp. to Gloucester City Mot. for

Summ. J), would permit a reasonable jury to find that these

officers used excessive force.  Further, Officer Goodwin

testified that he witnessed the incident and that he would be

able to identify the two officers who entered the cell with

Plaintiff if he saw them.

In light of this evidence, the Court finds there is a

genuine issue of material fact that precludes summary judgment on

Plaintiff's excessive force claim against Defendants Morrell and

Iepson.[19]  Furthermore, even if Plaintiff is ultimately able to

---

[18]  However, the Court notes that on Plaintiff's version of
facts there is no reasonable justification for the punches to
Plaintiff's chest that these officers allegedly inflicted.

[19]  Indeed, the Gloucester City Defendants highlight this as
a disputed fact.  (Gloucester Br. at 8.)  That dispute is
material and precludes summary judgment on Plaintiff's excessive
force claim.

In addition, in the face of the police report, the absence
of evidence from Officers Morrell and Iepson might persuade a

33

show that both officers were present but only one used excessive
force, liability could attach to both because clearly, on
Plaintiff's version of facts, each officer had a reasonable
opportunity to intervene to prevent the other from using force
against Plaintiff.  Plaintiff may proceed with his excessive
force claims against Officers Morrell and Iepson and their motion
for summary judgment on that claim is denied.

     2.  <u>Section 1983 Liability of Municipal Defendants</u>

Defendants Gloucester City and the Gloucester City Police
Department argue that all claims against them brought via 42
U.S.C. § 1983 (Counts Two, Three, Five and Seven) are barred
because those claims impermissibly rely on a theory of vicarious
liability.  Plaintiff opposes and claims that the Gloucester
City Police Department can be held liable for the actions of its
officers because the Department's supervisors tolerated similar
misconduct and maintained an inadequate internal investigation
system.  The Court has already determined that there is no legal
basis for the underlying claims in Counts Three, Five and Seven;
accordingly, the municipal defendants cannot be derivatively
liable on those counts.  The Court shall discuss Gloucester
City's liability for Count Two (excessive force) below.

_____

reasonable jury that these defendants are culpable; the officers
have not provided any evidence indicating that they were not
involved in the incident, such as sworn affidavits.  Of course,
even if they had denied involvement, summary judgment would be
inappropriate because there is a genuine issue of material fact.

However, the Court will grant the motion for summary judgment as to all claims against the Gloucester City Police Department.  In New Jersey a municipal police department is not an entity separate from the municipality, N.J. Stat. Ann. § 40A:14-118 (municipal police department is "an executive and enforcement function of municipal government"); therefore, the Gloucester City Police Department is not a proper defendant in this action for any of the claims, and is entitled to judgment as a matter of law on all counts of the Complaint, see Adams v. City of Camden, 461 F. Supp. 2d 263, 266 (D.N.J. 2006).

As to Gloucester City, although it is well-settled that a city cannot be liable for the acts of its employees under § 1983 solely because of that employment relationship, when the employee's act is the result of a municipal policy or custom, the municipality can be held liable for the resulting constitutional violations:

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." Bryan County, 520 U.S. at 417 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id.  Finally, a policy or custom may also exist where "the policymaker has failed

35

> to act affirmatively at all, [though] the
> need to take some action to control the
> agents of the government 'is so obvious, and
> the inadequacy of existing practice so likely
> to result in the violation of constitutional
> rights, that the policymaker can reasonably
> be said to have been deliberately indifferent
> to the need.'" Id. at 417-18 (quoting City of
> Canton, Ohio v. Harris, 489 U.S. 378, 390,
> 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989);
> see also Berg[ v. Cty. of Allegheny], 219
> F.3d [261,] 276 [(3d Cir. 2000)](holding that
> plaintiff must "demonstrat[e] that the
> municipal action was taken with 'deliberate
> indifference' to its known or obvious
> consequences").

Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d

Cir. 2003).  That third situation, deliberate indifference, is

the basis for Plaintiff's excessive force claim against

Gloucester City.

Plaintiff has alleged that Gloucester City fails to properly

investigate and/or discipline officers accused of using excessive

force.  Plaintiff comes forward with evidence showing that in

twenty five years, no officer has been fired for a disciplinary

reason.  The leadership of the Gloucester City police department

testified that they have no knowledge or recollection of an

internal investigation of a complaint of excessive force that

resulted in a finding of excessive force.[20]  In the face of this

---

[20]  By way of example, there were investigations into two
incidents of excessive force in 2005.  (Crothers Dep. at 44).
There is no evidence on how many excessive force complaints were
received.  There were investigations into fifteen new complaints
against police officers in 2001, seven in 2002, nine in 2003, and
sixteen in 2004, with no indication whether they all related to

evidence, and viewing it in the light most favorable to Plaintiff, a reasonable jury could find that the City has a policy or custom of ignoring unconstitutional excessive force in the police department such that it is deliberately indifferent to excessive force in violation of the Fourth Amendment.  See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 407-08 (1997).  Therefore, the Court shall deny the motion for summary judgment on Count Two; Plaintiff may proceed with his § 1983 claim against the City for excessive force.[21]

### 2.   Pain and Suffering

Plaintiff's excessive force claims also can be construed as tort claims.  Therefore, the Court must determine whether Officers Iepson and Morrell are exposed to claims for pain and suffering under New Jersey law.

---

excessive force or how many complaints were received.  (Id. at 48-50.)  Three of those investigations involved prior excessive force complaints against Officer Iepson, one against Officer Kraft, and at least two against Officer Morrell.  (Id. at 53.) At trial, Plaintiff will have the burden of proving that there was, prior to January 6, 2004, (1) a pattern of actual instances of excessive force by members of the Gloucester City Police Department, (2) which were reported to, or otherwise known by, the Department's leadership, (3) for which no disciplinary measures were taken, thus exhibiting deliberate indifference to the rights of persons to be free from the use of excessive police force.

[21] In Count Nine, Plaintiff explicitly asserts claims against the City for failure to train and supervise the defendant Gloucester City police officers.  This seems to be his method for articulating the basis of the City's liability for the officers' excessive force, which the Court recognizes here as viable under the deliberate indifference theory.

37

The Tort Claims Act, which clearly applies to Officers Iepson and Morrell, limits the availability of damages related to a plaintiff's pain and suffering:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing service.

N.J. Stat. Ann. § 59:9-2(d).

Defendants argue that because their medical expert found that Plaintiff's injuries were not permanent, the Court should grant summary judgment. This argument is inadequate on a motion for summary judgment. The Court must view the facts in the light most favorable to Plaintiff and he has presented evidence, substantiated by medical evaluation and testing, that he suffered a shoulder fracture and that he has permanent shoulder pain and impaired functionality in his range of motion from his injured shoulder. (Ex. G to Pl.'s Opp. to Gloucester Defs.' Mot. for Summ. J.) (Dr. Gleimer's Rpt.). The Court cannot determine at this stage, therefore, that Plaintiff's injuries fall outside the

requirements of this statute.   As such, the Court will deny
summary judgment on Plaintiff's pain and suffering claims.

**V.    CONCLUSION**

For the foregoing reasons, the Court shall grant the motions
for summary judgment in part and deny them in part, consistent
with this Opinion.   The only claims remaining for trial,
therefore, are the claims of excessive force arising under New
Jersey law and the Fourth Amendment of the Constitution as
against Defendants Patrolman Larry Goodwin, Officers Iepson and
Morrell, and deliberate indifference thereto by the City of
Gloucester, which shall be scheduled for trial shortly.   The
accompanying Order shall be entered.


**June 19, 2007**                         **s/ Jerome B. Simandle**
Date                              Jerome B. Simandle
                                  U.S. District Judge

39